217 F.2d 49
 HOOVER MOTOR EXPRESS CO., Inc., Appellant,
v.
TEAMSTERS, CHAUFFEURS, HELPERS AND TAXICAB DRIVERS, LOCAL UNION NO. 327, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (A. F. of L.), Appellees.
 No. 12063.
 United States Court of Appeals Sixth Circuit.
 November 23, 1954.
 
 Judson Harwood, Nashville, Tenn., for appellant.
 S. Del Fuston, Jr., Chattanooga, Tenn., H. G. B. King, Chattanooga, Tenn., Woll, Glenn & Thatcher, Washington, D. C., on brief, for appellee.
 Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.
 ALLEN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court granting defendants' motion for stay of trial pending arbitration between the parties.[1] The case arises out of a suit for damages for breach of contract filed by plaintiff, a corporation operating an extensive interstate motor express service in Tennessee and neighboring states, against defendants' labor unions representing plaintiff's employees in Nashville, Tennessee. The collective bargaining agreement between plaintiff and defendants recognized defendant Local Union No. 327 as collective bargaining representative of a unit of plaintiff's employees designated as "over the road drivers," and contained a no-strike provision, but contained no arbitration clause.
 
 
 2
 The complaint alleges that the defendant unions authorized, induced and encouraged a strike against plaintiff without first exhausting the means of settlement set out in the contract and claimed substantial damages due to the closing for approximately eight days of plaintiff's entire operation at Nashville, Tenn. The answer alleged that the work stoppages were unauthorized or wildcat strikes, for which defendants under the collective bargaining agreement were not liable, that they took all reasonable means to return the employees to their jobs and had violated no terms of the contract. Defendants then filed a motion under Section 3 of the United States Arbitration Act, 9 U.S.C., asking for an order staying trial of the action until arbitration had been had in accordance with the terms of the agreement. The instant appeal is prosecuted to the granting of this motion by the District Court.
 
 
 3
 Section 1 of Article VIII of the collective bargaining agreement reads as follows:
 
 
 4
 "Grievance, Machinery and Union Liability
 
 
 5
 "The Unions and the Employers agree that there shall be no strikes, lockout, tieup, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. Disputes shall first be taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:
 
 
 6
 "Section 1.
 
 
 7
 "(a) Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken to the Joint Area Committee. Such a decision will be final and binding on both parties.
 
 
 8
 "(b) Where a Joint State Committee is unable to agree or come to a decision on a case, it shall, at the request of the Union or the Employer involved, be appealed to the Joint Area Committee at the next regular session.
 
 
 9
 "(c) It is agreed that all matters pertaining to the interpretation of any provision of this contract may be referred, at the request of any party at any time, for final decision to the Joint Area Committee after first being heard by the Joint State Committee and, in event of referral, the Joint State Committee's decision shall not become effective.
 
 
 10
 "(d) Deadlocked cases may be submitted to umpire handling if a majority of the Joint Area Committee determine to submit such matter to an umpire for decision. Otherwise either party shall be permitted all legal or economic recourse.
 
 
 11
 "(e) Failure of any Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision withdraws the benefits of Article VIII."
 
 
 12
 Section 2 of the agreement relates to non-liability of the union for unauthorized strikes and work stoppages. It contains no provision for arbitration and no such provision is presented in the record.
 
 
 13
 At the oral hearing in this court the appealability of the stay order was questioned. The defendants cited the opinion of this court in Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353, which, relying upon Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 311, 79 L.Ed. 440, held that an order denying a stay of proceedings growing out of a prosecution for violation of the Emergency Price Control Act was not appealable. The Enelow case distinguished between interlocutory orders or decrees which constitute an exercise of equitable jurisdiction in granting or refusing an injunction and "a mere stay of proceedings which a court of law, as well as a court of equity, may grant in a cause pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice." However, in Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583, decided on the same day as the Enelow case, supra, the Supreme Court held that denial by the District Court of an application for a stay of proceedings in an action on a contract until an arbitration shall be had in accordance with the terms of the contract is in effect an order denying an interlocutory injunction and is appealable. The court held, page 452 of 293 U.S. page 314 of 55 S.Ct., that the special defense setting up the arbitration agreement is an equitable defense or cross-bill within the meaning of the Federal statutes and that the motion for stay is an application for an interlocutory injunction based on the special defense. This case, so similar factually to the instant case, we think is clearly controlling. See also Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876, 879. Cf. Markel Electric Products, Inc., v. United Electrical, Radio & Machine Workers of America, 2 Cir., 202 F.2d 435, where the court disposed on the merits of an appeal from denial of a motion to stay proceedings pending arbitration. We conclude that the order is appealable.
 
 
 14
 Plaintiff contends that the United States Arbitration Act is inapplicable to this proceeding and that a suit for damages for breach of contract is not the type of controversy contemplated by Article VIII of the bargaining agreement above quoted. Section 3 of the United States Arbitration Act in its material portion reads as follows:
 
 
 15
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
 
 
 16
 Section 1 of the same Act, after certain definitions, provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."
 
 
 17
 Plaintiff urges that the contract involved is a contract of employment and that a stay order therefore cannot be issued under the Arbitration Act, citing Gatliff Coal Co. v. Cox, supra, as authority for its position. The suit there was for wages, brought by an individual member of the United Mine Workers of America. While the court held that the exclusion clause of Section 1 of the Arbitration Act is applicable to the whole Act, this case is not authority for the proposition that the instant controversy is "a contract of employment" within the meaning of and subject to the exception in 9 U.S.C. § 3. The contract here involved is not an agreement for wages but the general bargaining contract between the unions and the employer, including an express "no-strike" clause. The contract of employment specifically described in the United States Arbitration Act and excepted from the operation thereof is a contract for the hiring of individuals, seamen, railroad employees, or workers engaged in foreign or interstate commerce. The collective bargaining agreement between the employer and the union defines the terms which will govern hiring, work, vacations, union shop and all conditions of employment. It is a trade agreement rather than a contract of employment. J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 334, 335, 64 S.Ct. 576, 88 L.Ed. 762. While the Gatliff case has been cited by other courts, cf. Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 192 F.2d 310, and International Union United Furniture Workers v. Colonial Hardwood Flooring Co., Inc., 4 Cir., 168 F.2d 33, for the proposition that a collective bargaining agreement is a contract of employment, we think these misconstrue the Gatliff holding, which on its facts simply supports the doctrine that an individual hiring for wages falls within the exception. While the Hardwood Flooring case, supra, affirmed the denial of a motion for a stay order in reliance upon the Gatliff case, another ground was involved which rendered the judgment clearly correct. As pointed out by Judge Parker, the arbitration provision involved did not cover a no-strike agreement and, since arbitration of that feature was not provided for, the stay order was properly denied.
 
 
 18
 Admittedly the authorities upon this question are in conflict. The Third Circuit particularly has issued several contradictory decisions upon the problem.
 
 
 19
 In Tenney Engineering, Inc., v. United Electrical, Radio & Machine Workers of America, 207 F.2d 450, 454, the Third Circuit held that collective bargaining agreements are contracts of employment within the purview of the United States Arbitration Act, but that the exception does not apply to workers engaged in the production of goods for interstate commerce. Chief Judge Biggs, in writing the opinion of the concurring judges, stated that the court should overrule its decision in the Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Pennsylvania Greyhound Lines, Inc., supra, and declared "A collective bargaining agreement is not a contract of employment." Judge Maris concurred in this view.
 
 
 20
 The exception in Section 1 of the Arbitration Act we think was intended to avoid the specific performance of contracts for personal services and not to apply to collective labor agreements. Lewittes & Sons v. United Furniture Workers of America, D.C., 95 F.Supp. 851, 855. The hiring of the individual workmen who are employed in accordance with the collective trade agreement is the contract of employment. United Office & Professional Workers of America v. Monumental Life Insurance Co., D.C., 88 F.Supp. 602. Cf. J. I. Case Co. v. National Labor Relations Board., supra, 334; Lewittes & Sons v. United Furniture Workers of America, supra. We conclude that the exception embodied in Section 1 applies to contracts for hiring and not to collective bargaining agreements and that, therefore, under the United States Arbitration Act, the District Court was authorized to entertain the application for a stay order in the case.
 
 
 21
 However, the stay order was improperly granted for the reason that the collective bargaining contract, so far as this record shows, does not provide for arbitration of the controversy here involved. It is a prerequisite to the issuance of a stay order under Section 3 of the Act that the issue involved shall be "referable to arbitration under an agreement in writing for such arbitration." No such agreement in writing is here presented. Article VIII of the collective bargaining contract, upon which both parties rely, is the only portion of the contract included in the record. It is headed "Grievance, Machinery and Union Liability." It is a reasonable assumption that "machinery" means the machinery established for the settlement of grievances. Assuming but not deciding that Section 1, which contains no provision for arbitration but does provide in Sub-section (d) for submission of deadlocked cases to "umpire handling," could be construed as providing for informal arbitration, we think that under this record Section 1 plainly covers only the settlement of grievances. In the commonly accepted meaning of the term "grievance," violation of a no-strike provision in a collective bargaining agreement does not constitute a grievance. Cf. Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, in which the Supreme Court discussed the meaning of the term "grievance," 325 U.S., pages 722-728, 65 S.Ct., pages 1289-1292. While this case construed the meaning of the term "grievance" under the Railway Labor Act of 1934, 45 U.S.C.A. § 151 et seq., it points out the difference "between what are regarded traditionally as the major and the minor disputes of the railway labor world", 325 U.S., page 723, 65 S.Ct., page 1290, and says that "The so-called minor disputes * * * involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment." Cf. Thomas v. New York, Chicago & St. Louis R. Co., 6 Cir., 185 F. 2d 614, 616. In West Texas Utilities Co., Inc., v. N. L. R. B., 92 U.S.App. D.C. 224, 206 F.2d 442, 446, the court held that the word "grievances" does not encompass the setting of wage rates for a large percentage of the employees in a certified bargaining unit and stated that the word "grievances," in the field of industrial relations, particularly in "unionized companies," usually refers to "`secondary disputes in contrast to disagreements concerning broad issues such as wage rates, hours and working conditions.' * * *" Richard A. Lester: Economics of Labor, 626. Cf. Prentice-Hall: Union Contracts and Collective Bargaining, Section 52401; Forkosch: A Treatise on Labor Law, Section 115. The dispute here involved is not shown in this meager record to be a "secondary dispute." The only information before the court as to the nature of the dispute which led to the strike is the allegation, not denied, that the strike arose from an effort on the part of the defendants "to enforce a claim said defendants were pressing against plaintiff under said contract." We think that under the principles laid down in the authorities cited above the calling of the strike did not constitute a grievance; that it therefore was not subject to the settlement procedure of Article VIII. Section 1 of the contract contemplates that complaints of employees which might eventually culminate in a strike, namely, grievances, were to be settled in a certain manner under Section 1, but the violation of the no-strike agreement of the collective bargaining contract is not a grievance. The record presents no provision that such a situation shall be arbitrated. The parties in their briefs and discussions relied upon decisions which include general provisions for arbitration. Cf. Tenney Engineering, Inc., v. United Electrical, Radio & Machine Workers of America, supra; Donahue v. Susquehanna Collieries Co., 3 Cir., 160 F.2d 661; Evans v. Hudson Coal Co., 3 Cir., 165 F.2d 970; Textile Workers Union of America v. Aleo Mfg. Co., D.C., 94 F.Supp. 626; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., supra. The absence of an arbitration clause relating to the no-strike provision led the Fourth Circuit in International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., supra, to hold that the arbitration statute did not apply to the no-strike clause. Here the contracting parties included no arbitration provision whatever in the contract. It necessarily follows that the United States Arbitration Act has no application and the stay order was erroneously granted. Cf. United Electrical, Radio & Machine Workers of America v. Miller Metal Products, Inc., 4 Cir., 215 F.2d 221.
 
 
 22
 The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The parties will be denominated as in the court below