## SWILLEY v. GALVESTON, H. & S. A. RY. CO. et al.

### No. 10219.

Court of Civil Appeals of Texas. Galveston.
June 18, 1936.

Rehearing Denied July 9, 1936.

Charles Murphy, of Houston, for appellant.

Baker, Botts, Andrews & Wharton, John P. Bullington, and Tom Martin Davis, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This suit was brought by appellant against appellees to recover damages for the alleged breach of his contract of employment by appellees.

The appellees answered by general demurrer and general denial, and specially pleaded provisions of the contract under which they claimed that the discharge of appellant was not violative of his contract with appellees.

Upon the close of the evidence the trial court withdrew the case from the jury and rendered judgment in favor of appellees.

Appellant duly excepted to the judgment, and has duly prosecuted his appeal therefrom.

Plaintiff's petition alleges in substance that in 1888 defendants and the labor organization of which plaintiff was a member entered into an agreement and contract which provided that no member of plaintiff's organization, which included all of the employees of defendants railway companies engaged in the service of operating locomotive engines for defendants, should be discharged without just and sufficient cause, and that any locomotive engineer of defendants should be entitled to a fair and impartial hearing before being discharged, and a right of appeal to the highest designated officer of defendants, and that, if it should be determined that the engineer was unjustly discharged, he would be reinstated and paid the sum of $7.18 per day for all time lost because of his wrongful discharge.

The petition then alleges that plaintiff was discharged without just and sufficient cause and asks for damages for such wrongful act of defendants.

It is further alleged in the petition that on October 27, 1928, after plaintiff had made a statement in reply to the complaints of the superintendent of defendants against him, he was furnished a letter by the superintendent notifying him of the offenses which caused his dismissal, and upon a hearing of the charges on November 24, 1927, by the superintendent they were sustained by him, that none of the causes constituted a fair and sufficient reason for his discharge, and plaintiff appealed to the highest designated officer of the company, who approved the action of the superintendent, and plaintiff was denied reinstatement.

Appellant further alleged that he accepted and abided by the terms and provisions of the contract entered into between the railroad company and the labor organization of which he was a member, and that he accepted the vocation for the remainder of his natural life, and would have so continued to truly and faithfully discharge his duties, and he relied upon and expected the appellees to abide by the contract.

He further alleged that there was in force a system of pensioning the employees

reaching the age of 70 years, and that he would be eligible for the pension upon reaching that age, and that he expected to continue in the service of the company until that time; that he was at that time 55 years of age, and as a result of the breaching of the contract, resulting from his discharge, he was entitled to damages.

The appellees answered by a general demurrer and general denial, and specially answered, setting out certain sections of the contract between the appellees and the labor organization of which appellant was a member, and insisted that it was the intention of the parties that the propriety of the discharge of an employee should be determined in accordance with the provisions of the contract, that is, that the officers of appellee companies were to make final decisions and that, the officers of appellee companies having made final decision adverse to appellant, the appellant was without a cause of action.

They further alleged that plaintiff had failed and refused to request the submission of his case to the supplemental board, as provided in section 16 (b) of the contract entered into in 1928 between plaintiff's labor organization and the defendant railway companies, which contract is set out in defendants' answer, and, in addition to subdivision (b) before set out, contains subdivision (c), which provides: "(c) If not so decided or disposed of, the disagreement may be handled as a dispute not adjusted by the appropriate adjustment board, as provided for in section 5, paragraph (a), of the Railway Labor Act [44 U.S.Stat. 577, 580]."

Appellees further pleaded that, because the contract between the organization of which appellant was a member and the appellees, provided for a termination upon 30 days' notice, appellant was entitled to recover but 30 days for time lost.

The appellees further answered that appellant had earned or could have earned as much money as he could have made in the employ of appellees, and was therefore entitled to recover nothing.

The contract upon which appellant's cause of action is based contains the following provisions:

"Discipline and Representation.

"Investigation.

"Sec. 1. No engineer shall be suspended or discharged or demerits entered against his record, without just and sufficient cause. Any engineer suspended or discharged shall be entitled to a fair and impartial investigation, and if found not guilty, shall be reinstated to his former position and allowed $7.18 per day for all time he has lost on such account.

"Engineer may Handle His Own Case.

"Section 2. If an engineer believes his suspension, discharge, or demerits to have been unjust, he shall make out a written statement of the facts in the case and submit it within ten (10) days to the proper division officer. . An engineer, if he so desires, may elect to handle his own case. The right of any engineer or foreman to have the regularly constituted committee of his organization represent him in the handling of his grievances, in accordance with the laws of his organization and under the recognized interpretation of the general committee making the schedule involved, is conceded. A hearing will be given promptly, and if the matter is not adjusted, an appeal may be taken to higher officers of the company, who will give the case prompt attention and a decision as early as practicable.

"Cases Handled Locally.

"Section 3. No decision rendered in a case that is handled by an engineer individually shall constitute a precedent or be cited in other cases that are handled by the regular committees. When an engineer has a grievance which the local committee of his organization is unable to adjust with local officials, the case will be refered to the general chairman of the B. of L. E. and B. of L. F. & E., who shall unite and work jointly in handling such grievances to its final conclusion. An appeal may be taken successively to the general officer vested with authority for the final handling of such matters. General officers will grant a hearing and render a decision as promptly as possible.

"Appeal to Highest Authority.

"Section 4. In case a grievance cannot be amicably adjusted with the local officials, an appeal may be taken successively to the highest authority; each of such officials will grant a hearing within five (5) days, where practicable, and will render a decision as early as possible. Whenever cases handled individually are appealed, the engineer selected to assist in presenting such appeal shall be one who is in the employ of the company on the same seniority district."

In section 16 (b) of the contract of April 4, 1928, signed by these same parties, among others, it is provided as follows: "It is furthermore mutually agreed that if any case of discipline arises which has not been disposed of in the usual manner by the General Committees of the employees, up to and including the Chief Operating Officer of the Railroad (or someone officially designated by him), and if the representatives of the employees so desire, such case will be referred to a Supplemental Board of Adjustment consisting of two members, one, an officer designated by the carrier involved, and one, an officer of the organization representing the employee involved, who will have full authority to decide or otherwise dispose of the case, such decision or disposition to be final."

The evidence shows that on October 26, 1928, appellant was engineer in charge of train No. X–766 from Galveston to Houston with a consist of 100 empty freight cars. On October 27th the superintendent of the division, Mr. K. C. Marshall, addressed to appellant a letter advising him that he had been observed on the run in question to violate the following rules:

(1) Passing over drawbridge at Clear Creek in excess of 25 miles per hour, in violation of time table special instructions rule 58.

(2) Passing through the limits of Seabrook in excess of 18 miles per hour, in violation of time table special instructions rule 53.

(3) Exceeding the maximum speed restrictions of 30 miles per hour between Seabrook and Strang and Sinco, in violation of time table special instructions rule 52.

(4) Failing to sound whistle signal 14–C while taking water at Strang, in violation of rule 881.

(5) Failing to detach engine while taking water at Strang, in violation of rule 877.

(6) Failing to clear the time of passenger train 173 by 5 minutes at the siding at Sinco, in violation of rule S–87.

In this same letter he was advised that he was dismissed from the service for the violation of the rules mentioned, and was also advised that before his dismissal would be made permanent he was entitled to a hearing at which he might be represented by a person of his own choice should he so desire.

Section 2 of article 35 of the agreement between the railroad and the union of which appellant was a member provided that, in case of discipline or discharge claimed to be unjust, the complaining party must make a written statement of the facts in the case and submit it to the proper division officer within 10 days. Appellant failed, however, to make any written statement or to present himself for a hearing within the 10 days, and Superintendent Marshall again wrote him on November 8th reminding him of the 10-day requirement, which had then already passed, and agreeing to waive the 10-day requirement if appellant still wanted to present himself for a hearing. Thereafter appellant presented himself for a hearing, at which time he was represented by Mr. S. E. Tanner, who was a member of appellant's union. At the conclusion of this hearing Mr. Tanner, the representative of appellant, stated that the hearing had been conducted to his satisfaction. Mr. Tanner continued to represent appellant in the presentation of his case to the higher officials. Appellant's dismissal from the service was made permanent by a letter to him from Superintendent Marshall dated November 27, 1928. When the decision of Superintendent Marshall was appealed to the highest operating official of the company, Mr. Tanner was aided in his handling of the case by Mr. F. T. Collins, general chairman of the Brotherhood of Locomotive Engineers, and Mr. B. M. Alvord, general chairman of the Brotherhood of Locomotive Firemen and Engineers. Finally Mr. E. H. Kruse, assistant grand chief engineer, Brotherhood of Locomotive Engineers, came down from Cleveland, Ohio, and assisted in the handling of the case. Throughout the proceedings the violation of the rules was admitted by appellant's representatives, and his reinstatement was sought solely on a leniency basis. Failing to procure appellant's reinstatement on this basis, his representatives, by a letter dated February 4, 1931, withdrew the case from further handling. Appellant made no effort to have his case considered by the supplemental board of adjustment set up in the contract of April 4, 1928, for the handling of such matters.

After the decision of appellant's case against him by the highest operating official of defendants, he declined to prose-

cute his case before the supplemental board of adjustment provided for in section 16 of the contract before set out.

Appellee's first counter proposition to all of the contentions presented in appellant's brief is: "Where a contract between an employer and his employees provides a forum or series of forums for the determination and settlement of disputes between an employee and the employer arising out of the discharge of the former, and where such a discharged employee fails to exhaust his remedies under the contract, or where he has his complaint determined adversely by the final forum provided by the contract, he may not maintain an action at law by reason of such discharge on the ground that it was unjustified."

The second counter proposition is: "Where an employee is admittedly guilty of violation of the reasonable rules of an employer, the employer, as a matter of law, has a right to discharge the employee and it would be error for the court to submit to a jury the issue of the justness or unjustness of such discharge."

We think both of these propositions are sound in law and logic and present a complete answer to all of appellant's contentions that the judgment of the trial court should be reversed for the reasons stated in his brief. The primary purpose of the provisions of the contract upon which appellant's cause of action is based, in providing for the special tribunals therein created for settling disagreements of the parties as to a violation of the contract by either party, was to prevent the necessary cost and expense of an appeal to the courts by either party for a decision of their disagreements, before their remedy of appeal to the special tribunals provided for in the contract had been exhausted.

While neither the issues nor the evidence in the two cases is identical, the same contract as the one now before us was construed by the court in the case of St. Louis B. & M. Ry. Co. v. Booker (Tex.Civ.App.) 5 S.W.(2d) 856. The reasoning of the opinion in the Booker Case supports the contention of appellees in this case that neither of the parties to this contract will be heard to appeal to the courts until the remedies provided in the contract for appeal to the tribunals therein provided have been exhausted. This construction placed upon the contract by the opinion in the Booker Case has been followed by the decisions of appellate courts of this state. Robertson v. Panhandle & S. F. Ry. Co. (Tex.Civ.App.) 77 S.W.(2d) 1078; San Antonio & A. P. Ry. Co. v. Collins (Tex.Com.App.) 61 S.W.(2d) 84; Estelle Undertaking Co. v. Grand Lodge Colored Knights of Pythias (Tex.Civ. App.) 53 S.W.(2d) 316; Cousins v. Pullman Co. (Tex.Civ.App.) 72 S.W.(2d) 356, 357:

Cases from other jurisdictions which have rendered similar opinions without citing or probably ever hearing of the Booker Case are Harrison v. Pullman Co. (C.C.A.) 68 F.(2d) 826, and Caufield v. Yazoo & M. V. R. Co., 170 La. 155, 127 So. 585.

In the Cousins Case, supra, which is directly in point on the questions involved in this appeal, it is said by the court: "The doctrine is well settled that where the contract of employment provides, as in the instant case, that a discharged employee may appeal to designated tribunals, he is bound to pursue the contract remedy and cannot properly complain to a court for redress, unless and until he exhausts that remedy, and shows an effective appeal, entitling him to reinstatement and compensation for wages lost."

But, aside from this question of appellant's right to appeal to the courts without first exhausting the remedy of appeal to the special tribunals created by his contract of employment, we think the evidence shows that he had violated reasonable rules of his employers designed for the safety of all the operatives of the railroad, and the better protection of the public, and his employers, as a matter of law, had the right to discharge him for such disobedience of its rules. Robertson v. Panhandle & S. F. Ry. Co. (Tex.Civ.App.) 77 S.W. (2d) 1078; Adams v. Southern P. Co., 204 Cal. 63, 266 P. 541, 57 A.L.R. 1066; Farmer v. First Trust Co. (C.C.A.) 246 F. 671, L.R.A.1918C, 1027; Caulfield v. Yazoo & M. V. Ry. Co., supra.

These conclusions require an affirmance of the judgment, and it has been so ordered.

Affirmed.